Ben SAYLOR, Movant, v. COMMON-
WEALTH of Kentucky, Opposed.

Court of Appeals of Kentucky.
April 17, 1951.

PER CURIAM.
Appeal denied. Judgment affirmed.

MOORE et al. v. MOORE.

Court of Appeals of Kentucky.
March 23, 1951.

Rehearing Denied May 17, 1951.

Rodney Haggard, Winchester, for ap-
pellants.

D. Andrew Shearard, Berea, for appellee.

LATIMER, Justice.

Appellant, Bonnie Wilson Moore, in-
stituted this action seeking divorce on the
grounds of cruel and inhuman treatment.
She further sought the sum of $600 for
furniture and household articles purchased
by her and for alimony in the sum of $10,
000 and an allowance pendente lite.

The defendant, James B. Moore, by
answer denied plaintiff's allegations and for
further answer alleged he treated the plain-
tiff in a kind and affectionate manner; to
the extent of his ability, provided a com-
fortable home with all necessities, comforts
and conveniences; but notwithstanding
this, the plaintiff was dissatisfied and
insisted on living beyond the means of the
defendant and without fault on his part
left him on August 31, 1948. He alleged
further that plaintiff was in good physical
condition; that she is a high school grad-
uate; that she had one year college work
at Berea; that she is a proficient typist
and bookkeeper with considerable experi-
ence at both; and that she was able to
earn a good living for herself. He then
prayed that plaintiff's petition be dismissed.

The court denied the plaintiff a divorce,
adjudged that the defendant pay a hospital
and doctor's bill and found nothing further
for plaintiff. From that judgment this
appeal is prosecuted.

We deem it entirely unnecessary to go
into an extended statement of facts con-
cerning the difficulties between these par-
ties. Much of the evidence relative to the
marital life of these parties concerns more
or less trifling matters, although there may
be seen the continuing fact that they were
unable to get along together. Possibly this
was due somewhat to the fact that this wife
was brought into the home of the husband
and his mother, where the three of them
lived together. It may have been partially

due to the fact an uncle of the husband also came to live with them, which was apparently objectionable to appellant. A portion of the difficulty was perhaps due to the inability of the members of the family to adjust themselves to each other. ·

Much complaint is made by the husband that his wife had a strong penchant for good clothes and that she left him on numerous occasions. She denies leaving him. The record shows that she did make intermittent temporary visits to her parents in Winchester. However, it cannot escape attention that the husband's mother lived in his home and it was unnecessary for him to absent himself from home in order to see her. Appellant says that the last time she went to her mother's home, her husband cursed her and told her to leave; that she went home and soon thereafter she returned in the company of her father and mother, who upon her request accompanied her for the purpose of persuading the husband to allow her to return. Appellant says that at that time she entreated her husband to let her return home, but that he refused and, pushing her, told her to get out. Herein do we find the most telling and controlling part of the evidence in this case. With respect to this visit appellee, on cross examination, testified as follows:

"Q. Was she back at your home on the 15th. of October at night and asked you to let her stay and you told her you wouldn't? A. She was back there once, I don't know whether that was the day or not. Yes, I believe that is the right day.

"Q. You wouldn't let her stay, would you, Mr. Moore? A. I told her she had better go back home and make up her mind whether she wanted to stay with me or not, or over there at Winchester. Yes, on that day, September the 15th. she came over there in pajamas.

"Q. Was that the reason you ran her off? A. No, I didn't run her off. She didn't come to stay that night.

"Q. How many times did you push her that night? A. I never touched her.

"By Mrs. Bonnie Moore, the Plaintiff.

. "You said, 'there is your mother, go on now, go on.'

"By Mr. Moore, the Witness:

"I never said any such damned thing."

█ Thus, we see that the husband himself practically corroborates the wife in her testimony by his admittedly telling her to go back home and make up her mind whether she wanted to stay or not. This in substance is a refusal to permit her return home. It will be further observed that the wife testifying as to reason for not living with her husband, stated:

"Q. Would you now be living with your husband, if he would let you live with him? A. I guess I would.

"Q. Don't want any guess work? A. Well, I would have when I came over here. I wanted to and he didn't want me.

"Q. I say the only reason you are not living with him is because he won't let you? A. That is right.

"Q. And right tonight you would be right out to his home if he would let you be there? A. Sir, Yes sir."

According to this record, the husband at no time has ever stated or admitted that he would be willing for her to come back home or that he would let her come back home. We need go no further.

█ We cannot understand how the Chancellor could refuse to grant the wife the divorce or how in the face of this testimony, he could throw this wife on her own and apparently thus liquidate any obligation the husband may have had to support her. While, we cannot reverse a judgment granting a divorce, precedent is not lacking for reversal of a judgment refusing a divorce. See Doolin v. Doolin, 211 Ky. 207, 277 S.W. 243, and cases cited therein. We readily conclude that the court should have and is hereby directed to enter a judgment granting the wife a divorce.

█ Much proof is incorporated in this record as to the ability of the husband to pay alimony. In addition to granting the divorce, the court will make a reasonable lump sum allowance for alimony, based upon the husband's worth and ability to pay.

We do not feel inclined to disturb the Chancellor's allowance as to attorney's fee. However, we realize that the amount allowed was based upon services rendered up to that time. This appeal has since been

made and there are yet further services to be performed. The court should make further reasonable allowance for attorney's fee.

The judgment is reversed with directions to enter judgment not inconsistent herewith.